The Honorable, the judges of the United States Court of Appeals for the 4th Circuit Alright, we are prepared to begin our argument here in our second case this morning, number 19-1044 Billups v. City of Charleston Mr. Hines, we'd be pleased to hear from you Thank you Your Honor, and may it please the Court The first point that I want to get to is that the city's licensing law is not in fact regulation on speech and therefore the district court was wrong to apply First Amendment scrutiny to begin with what they are, because a person cannot be a guide without any meaningful sense of the word without having some baseline level of competency to perform that service and what the city, and I don't think there's any question here, has an important interest in both protecting and promoting its vital tourism economy You say it's not a regulation of speech when the tour is given and guides are deemed qualified to conduct that tour Isn't what the guides do speech? And doesn't the conditions under which the guides can conduct the tour doesn't that amount to some regulation of speech? I'm not saying that that automatically puts you into a strict scrutiny category that's another question altogether, but how can you say that this doesn't regulate speech in some way? Well because it is not interfering, Your Honor, with the expressive component of speech It's interfering with the conditions under which people can offer speech That would only be incidental, Your Honor, to its commercial purpose Well that's not quite true based on the criteria that are being imposed It seems to me that not every citizen can stand up and say I'll give you a tour of Charleston They have to comply with the regulation which requires that they learn certain content and the license is conditioned on their mastery to a certain level of that content So it seems to me that not every person can stand up and say that even though they may be the best professor at the nearby university who knows the details of the history that person still can't go and speak to persons in the public about the detail of what's being viewed They have to get a license and it may be that a license is very appropriate for a lot of reasons But I think the fundamental question that has been presented in this case is whether the learning of a 500 page manual talking about details of 2,000 different buildings is a reasonable or a reasonably narrow regulation for giving tours Your Honor, and I'll move on to I think the latter part of what you were saying Let me make a couple points quickly on this first point You're absolutely right that not everybody can give a tour or can be a guide But the point that I want to try to make is that that's not just true simply because of the licensing law It's true as a matter of fact The point that you was making and the point that I was advancing was the tour is the giving of speech In other words, if I speak to my family and tell them this is Monticello and it's the home of Thomas Jefferson and so forth I'm giving a speech Now I can do that to my family I assume But the question in South Carolina, could I do that to 10 citizens who I know Or 10 citizens who I just solicit through my club to give a tour And the answer is you regulate that which is fine I think there are a lot of good reasons for regulation And you guys have them, you have criminal backgrounds and representation in commercial development of the city and all this But the question really raised in this case is not focusing on those aspects The question in this case is focusing on the regulation of what these people can say based on being qualified by the criteria that are imposed Your honor, very quickly You certainly could as could anyone else so long as we're not talking about being paid for it So that is one very important distinction here in terms of this is about hired guiding And again it's not hired speech because again the point and I'll move on from this to talk more about the intermediate scrutiny analysis But I do want to make the point that maybe let me liken this to an interpreter Well that's all fair enough, that's all fair enough But the initial question you started out with which was somewhat provocative is that this does not regulate speech And it seems to me the center point of touring is speaking And I have a hard time with that argument and it places a barrier on your further arguments I think Because I think we clearly have a regulation of giving tours And some aspects of giving tours are not speech related They're related to other fraud and all kinds of other things But there are most of the aspects of giving tours is speech And in this case that aspect is regulated by the various criteria that are being challenged Anyway you may proceed, I'm just telling you how I'm troubled by your initial comment that we're not even talking about speech here I'm not saying that speech is not involved but I'm saying that all speakers are not guides And what the city is, the regulation is getting at is about minimum standards or some way of quality, promotion of quality And to do that, not for by the way any agenda that the city has in terms of the content of speech which I know is I think that you clearly have some substantial state interest here in making sure that tourists get what they pay for And are presenting and having the historical and architectural beauty of Charleston conveyed Those may be substantial state interest but I'm wondering if you have tried other means of promoting these interests 483 pages or 453 pages, that sounds like a lot of material to master There are other cities I think that have tried other alternatives One alternative that struck me as potentially promising that would lessen the regulation of speech And at the same time preserve your substantial interest is allowing tour guides that pass this particular test or any test To wear some button or uniform or insignia, you could have a button or you could have a particular uniform Or you could have an insignia showing an advanced certification Although this is not a professional service, one of the things that strikes me when I go into a doctor's office Is whether the doctor is board certified The doctors can still practice but if they've taken a certain set of boards Then they become board certified in a particular specialty And when I see that kind of certification framed, that gives me a level of assurance And so I'm wondering if you couldn't have a set of uniforms for guides who are certified and who've passed this test Without prohibiting others from offering their services and their interpretation of the city's history And what the city means I mean there could be all kinds of interesting buttons and uniforms and insignias and everything That could become synonymous with someone who is especially well informed and has passed this test But you wouldn't have to cut off other people from offering their interpretation of Charleston and its history and what it means And so have you tried these other things? Have you thought about these other things? Have you tried some of these other things? No your honor, they've not been tried And I want to, on that point again Why wouldn't you try them? Well your honor, but it wouldn't be as effective And that is the point Now we've got, to speak in terms of on this record We do have testimony from for instance Mayor Riley Who the judge specifically found to be credible and even referenced his expertise in this area And who's offered evidence by virtue of his 40 years or so of public life and being the mayor of Charleston About the inadequacy of a voluntary licensure, some sort of program I thought it was very interesting in his order early on denying the cross motion to dismiss and preliminary injunction Where Judge Norton, he really equated this voluntary concept with nothing more Or in his view indistinguishable from simply relying on market forces And if the court will indulge me just a moment, this is just a couple lines But he addresses both these things in one fell swoop and I think quite convincingly The court finds there's also reason to believe the plaintiff's proposed reliance on market forces is insufficient The very fact that the problem exists suggests that it has escaped the grasp of the invisible hand And he continues to say that to the extent plaintiffs suggest the city rely on a private organization to establish a voluntary certification program The court considers such a suggestion indistinguishable from reliance on market forces Essentially that's what it is your honor But as I understand it from the plaintiff's argument They're saying hey if you had this certification that you could display to prospective customers of tour guide services You would stand out in the marketplace as someone with a greater indicia of quality and reliability Well in essence your honor I submit that to make that argument is to make the city's point Is that it does matter, it is in the furtherance of promotion and protecting the tourism business in Charleston To have qualified guides giving people their money's worth when they have tours And the very fact that tourists would be drawn to a qualified guide I.e. a certified guide is proof positive of the workings of what the city is trying to accomplish It seems to me you're making a case that there is a government interest which justifies the regulation of tour guides And I think you make that case myself But what troubles me is the breadth of the regulation For instance if you had a Michelin starred chef who said I know restaurants in Charleston And I give tours of the various restaurants talking about their menus Talking about the people who repair it And he advertises that this is a restaurant tour Well he can't get a license because in order for him to get a license He has to learn about the 2,000 buildings and the architecture and the history None of which interests him and none of which he's promoting So the question would be could he not simply advertise as a restaurant guide He wouldn't have the certification And the city could certainly promote higher guides who are certified by the city That would get around fast And then those certified persons will have a higher level of confidence in the general facts about Charleston I'm not sure it should be as broad as you guys have done it You have actually failed people who sound like they're pretty good But they couldn't pass the test because of the huge manual they had to learn That's another issue it seems to me But the real question is how broad do you have to go to serve the interests that you have And I think you need not demonstrate that you have an interest I think you have to demonstrate how what you're doing serves those interests narrowly And that would be consistent with that Reynolds case that I believe is called Reynolds that y'all discussed That's exactly – I understand the court's question Let me say this about Reynolds and maybe a more technical argument when we're talking about review of a record on appeal I don't think there's any way to read Judge Norton's order, the trial court order I've never candidly seen one that had this much reluctance expressly stated in ruling the way he ruled Judge Norton viewed – not that we had an evidentiary problem in the sense of we didn't put forth evidence of why these alternatives would not be as effective He viewed the problem as when, or in this case, when they were or were not considered He viewed Reynolds as requiring pre-enactment in language that opinion uses to have tried Or if not tried, he suggests perhaps even actually considered But I want to make sure that he, in his order, he refers to post hoc justification for the law And as I understand it, the judge is clearly saying that his hand was forced Not because the evidence that was presented was found wanting or whether or not it was nearly tailored But when that evidence, when in time that evidence came from Meaning when he calls it post hoc justification, he's not saying it's not justified He's saying it's post hoc and that's the problem with E.C. Reynolds Well, but what is the – I think that the Reynolds case that Judge King mentioned is important here And you don't need – you wouldn't have to necessarily adopt an alternative But it seems to me Reynolds does require that you seriously consider less restrictive alternatives And when I read the record below, I wasn't clear that it – what you've done amounted to serious consideration It just amounted to sort of speculation, oh, this won't work, this won't do I think a number of cities like Charleston are venues of great historic and architectural interest I don't think they all have these sorts of tests And I think Baltimore and Chicago have experimented with different forms of certification and the like But wasn't the – when you approach the less restrictive alternatives Wasn't that just speculation and a sense that we've always done it this way so this is the only way And I wondered if – what's the problem with looking into it a little bit more seriously To see if there's something that – some way that can protect Charleston's interest in presenting itself As a place really of unparalleled beauty and historical interest And at the same time didn't create a kind of guild mentality or barrier to entry That kept other people out entirely In other words, I just wonder whether there can't be solutions here Which serve both the interest in speech that we've identified And also preserve Charleston's very substantial interest here But I just wonder, have you tried to find a way to preserve both values? You are, again, as far as trying, in terms of implementing, we're forced to say no But if I – very briefly, I think my beep sounded, but I need to cover a little bit of ground if I may Number one, think about – in his prior orders, Judge Norton, I think, perfectly analyzed the framework of the law here When he recognized that this whole idea of less restrictive alternatives presupposes that they're both readily available And would be at least as effective as the challenge regulation. Now, in his order, and this is not, again, speculative because Your Honor mentioned that, about serious consideration Of course, the trial judge himself obviously did conduct a four-day trial and heard quite a lot of witnesses and reviewed quite a lot of evidence But this is from when the case – before the case went to trial that the judge specifically identified in his order denying summary judgment The city has presented evidence that each of Plaintiff's alternative proposals would be either impracticable or less effective than the current licensing regime So as far as the question about – I mean the evidence is there, and there is in every indication in the judge's order The actual judge who was making these determinations is that he ruled because of the timing of having not considered or tried or at least considered alternatives Prior to the enactment of this law over 30 years ago, and he did that on the basis of a case that came down in 2015 And the judge was kind to mention, I think, in a footnote that it's hard to blame the city for not having met a standard that didn't arise until after 30 years Or 30 years or so after the enactment, but Your Honor – Thank you, you've got some rebuttal time, and we really appreciate what you've said, and you've reserved some time for rebuttal And at this point, if Judge Niemeyer and Judge King have no further questions, I'd like to hear from Mr. Panju If my colleagues have further questions, that's fine, but if they have no further questions, I'd like to, at this point, proceed to hear the other side of things Thank you, Your Honor I have no further questions That's fine All right, Mr. Panju, let's hear your side of it May it please the court, this is a free speech case We know from Holder v. Humanitarian Law Project that a law is a restriction on speech if its application is triggered by communicating a message And we know from the trial record in this case that the only people who needed a tour guide license were people who talked about Charleston for pay The guy driving the carriage in downtown Charleston didn't need a tour guide license But the person standing up in that carriage and telling stories to the passengers about Charleston, that person needed to pass a test and obtain a license That makes the license a restriction on speech, not conduct, which means at least intermediate scrutiny applies Every federal judge What I want to say is that I take your point on speech But I'm also wondering, that doesn't suggest to me particularly that strict scrutiny would apply It's not political speech or what have you It doesn't seem to me to preclude, it doesn't seem to me to require strict scrutiny It seems that it might well, if we were to conclude that Charleston had substantial state interest, that it would require maybe intermediate scrutiny Which would mean not necessarily least restrictive means, but less restrictive means So I gather from your comments that intermediate scrutiny might be a way to approach this problem and preserve the values you're talking about And also accord some respect to Charleston's interest in making sure that people who come to the city get what they pay for And are not done in by a bunch of Charlestons Your honor, we believe that we prevail under either intermediate scrutiny or strict scrutiny However, your honor is correct The clearest path to affirmance is laid out in the district court opinion That the law fails under intermediate scrutiny After a week long bench trial, the district court concluded that it was unable to find that the license was narrowly tailored And here's what the court said at joint appendix 2030 In other words, you didn't get to try because there was nothing to try And here, even at oral argument, the city concedes that it hasn't tried anything And yet after a week long trial, the court's findings, which are subject to a clearly erroneous standard Which the city concedes that the standard that applies to the findings of fact The court found that there are several less restrictive alternatives Including voluntary certification, business licensing, its deceptive solicitation ordinance on its own books, or hiring its own floor guides And that this is actually used in other cities All these alternatives are used in other cities that are similarly situated in terms of size and tourism That evidentiary default, your honor, was fatal The city made no attempt to investigate anything And McCullen's warning about unusual laws rings true here In McCullen, the court says two things that are vitally important to the analysis in this case First, you have to demonstrate, using evidence, that the law is narrowly tailored In other words, to borrow language from McCullen, it is not enough for the government to simply say That less restrictive alternatives won't work And that's all that the city has offered here I take your point, and I think it's a good one I wonder, does the city actually have to try the less restrictive alternatives and put them in place Or is a more serious investigation of the alternatives than is heretofore been done Would that suffice? In other words, I take your point that the alternatives have not been considered with sufficient seriousness I take that point I'm not sure that each and every alternative has to be actually tried or put in place As long as there's a considerably more serious investigation than has taken place heretofore A lot of it has just been dismissing the alternatives out of hand And some of them do deserve to be dismissed out of hand But others show a greater promise of actually working But I mean, what do you understand the level to be of investigation to be Actual trial of something, or simply looking, giving it a much harder look than they've given it heretofore So Reynolds says trying, and I think that echoes McCullen Which says you must demonstrate with evidence that a less restrictive alternative will not work And in that case, there was evidence in the record that the Commonwealth of Massachusetts Had actually tried less restrictive alternatives, which the Fourth Circuit interpreted as requiring trying Trying is the easiest way for the government to say, look, there are less restrictive alternatives We've tried it, it doesn't work Now, whether you can satisfy narrow tailoring short of actually trying And just to hypothesize here, perhaps there's a study on a less restrictive alternative that exists and is introduced We don't know here if that's sufficient And we don't know because the city never got to trying anything And although the district court notes that it could use some guidance on what will satisfy the trying That's referenced in Reynolds with respect to the narrow tailoring inquiry It never had to delve into that because on this record The case is just not a useful vehicle to explore that Simply because there was nothing to try And because the city defaulted on its burden by resorting to regulating protected speech as a first resort And so we point the court to McCullen Because McCullen says that you need to demonstrate with evidence The second thing I think that is important here, Your Honor, is that McCullen also says that unusual laws get additional scrutiny And this is an unusual law There are only three United States cities that actually require testing and licensing of tour guides Along with two small towns outside of Charleston Virtually every U.S. city uses a less restrictive alternative Which resulted in the court in its findings of fact and conclusions of law To echo the opinion by the D.C. circuit when it struck down the tour guide licensing law in Washington, D.C. In Edwards v. District of Columbia There the court found that virtually every other U.S. city uses a less restrictive alternative And so it's incumbent upon the city to come forth with evidence, which it hasn't Let alone any explanation For why the harms it claims will exist in Charleston In the absence of licensing and testing Don't exist in any of these other cities that don't license and test tour guides What would be less restrictive alternatives that you would find particularly promising? The two most prevalent less restrictive alternatives used around the United States Are business licensing and voluntary certification As they relate to addressing the government's interest with respect to its tourism industry And a less restrictive alternative to address the government's interest in having aggressive solicitation, for example Would be the city's own deceptive solicitation ordinance Which the district court found after a week-long trial That tour guides are hardly the only people that offer to sell things in Charleston And the city has shown that it can deal with it Because it has tourism enforcement officers patrolling these areas And it can proactively enforce the deceptive solicitation ordinance Isn't there a difference between the deceptive solicitation ordinance and the voluntary certification? The deceptive solicitation ordinance does present enforcement problems The voluntary certification or certification program seems to me more promising How do you assess those two alternatives? Do you think the voluntary certification is a more promising alternative? We don't believe it's a binary choice between the deceptive solicitation and voluntary certification Because they address two different types of harms Which are the two types of harms the city came out with at trial One type of harm that they're concerned about is that If they don't force tour guides to master a nearly 500-page tour guide training manual Then tour guides will be engaging in aggressive solicitation The district court correctly found that this is a commercial speech concern You can address commercial speech by regulating deceptive solicitation, which you already do The second interest that the city was concerned about in terms of harm Was that it testified that its tourism industry would go down the tubes To use their quote on the witness stand If they don't force tour guides to master information that the city thinks is important Architecture and historic preservation And there the district court again said Look, voluntary certification is a less restrictive alternative It's used in Baltimore, it's used in Chicago Where the city's own witness came from What kind of certification, for example, I'm intrigued by that But what kind of certification was used that would be available for the public to perceive? Was it a uniform or a button or an insignia? Or what was it? So you can do both, your honor So one way that you could do it is simply by having a special match I believe the city of Charleston started doing this after the law was struck down That indicates visually that someone is a certified tour guide And has voluntarily retained credentials that they can use and send a market signal Another way is what the city of Chicago does The trial record reflects that when people contacted the city of Chicago's tourism arm They would refer prospective tourists that wanted to hire tour guides To the voluntary certification organization in Chicago And they had certified tour guides that they would connect with those people There's myriad ways that the city can send that signal And wearing a badge that says I'm certified because I passed a test on a voluntary basis If the city finds that valuable And if those individual speakers find that valuable That is a less restrictive alternative that the city absolutely has to try And as we explained in our first 28J letter In the Freener case, which is the case in the southern district of Georgia That struck down Savannah's tour guide testing and licensing law In Savannah, they've adopted an official policy of encouraging voluntary certification Your honor, this is what the court ultimately said With respect to deceptive solicitation and voluntary certification As it relates to the city's testimony Where they simply dismiss those less restrictive alternatives as not effective Quote, and this is at joint appendix 2030 Quote, the city testimony presented during trial About the respective impracticalities of using For example, the deceptive solicitation ordinance Or a voluntary certification scheme Is a post hoc justification for the licensing law In other words, your honor, the city cannot just bring out government officials For purposes of trial to try to assert and concoct evidence That this is somehow not effective Under intermediate scrutiny, under McClellan and Reynolds The government has an affirmative evidentiary burden To try readily available less restrictive alternatives The city had knowledge that those were available Especially when the D.C. circuit struck down the licensing law in Washington, D.C. Where the city just put out a press release saying We think our licensing is fine And the city had an opportunity to produce this evidence To support their assertion after we sued them That's when they decided to repeal the most Obviously violative of the first amendment aspects of the law One, passing an oral exam Second, if you don't pass the exam Filing a script with the government that has to be approved And sticking to that script They repealed those laws But they never engaged in any attempt to investigate Or consider less restrictive alternatives There's only one reason, your honor To force tour guides to master a nearly 500 page tour guide training manual That reflects the city's highest priorities Architecture and historic preservation And that is to influence the content of speech We ask, your honors, to affirm under intermediate scrutiny It is the clearest path to affirmance It's supported by a week-long trial And a trial record that makes clear That the city defaulted on its evidentiary burden But if the court finds that the city's licensing law Satisfies intermediate scrutiny Then, because the record supports it We'd ask the court to strike down the law As a content-based restriction on speech under read The city was motivated by a desire to influence the content of speech And the record bears that out If your honor has no further questions We'd ask the court to affirm And to strike down the licensing law Thank you very much, sir Judge Nehmeyer, Judge King Do you have any further questions? I'm ready to continue All right, Judge King I'm ready to go All right, let's hear from Mr. Volokh Who is representing Cato in an amicus capacity Mr. Volokh, we're happy to hear from you And have you before the court Thank you very much, your honors It's a great pleasure to be here We agree with the arguments brought forth On behalf of Billups and the other plaintiffs But we also think that indeed This is a content-based restriction That is subject to strict scrutiny Now, strict scrutiny doesn't just apply To regulations of political speech To give just a few examples from recent years The Supreme Court has applied strict scrutiny To regulations of violent video games In the Entertainment Merchants case It has said strict scrutiny is applicable To the regulation of animal cruelty videos It has said strict scrutiny is applicable To regulations of sexually themed speech In Playboy Entertainment You know, that's sort of a general regulation of society Whereas this seems to be focused mostly On the commercial interests of Charleston And the promotion of the city And keeping its image And it seems to me that that commercial aspect Provides a material distinction Between the cases you cite for strict scrutiny And some level of intermediate scrutiny Your honor, we agree that there is A commercial dimension here in the sense that Tour guide speech is sold for money But that was true of all So it's not only sold for money But the object of the city Is to commercially promote the city It's not interested in promoting A particular content It's interested in obtaining A commercially desirable result for the city For the economic benefit of the city And so it seems to me While there may be There clearly is content interest by the city That content interest Still comes back to making sure that Tourism isn't a bunch of As Judge Wilkinson said Charleston is saying anything they want The city has an interest to promote itself And have people come And it's a very important interest economically I'm not sure You need to press it that hard myself Your honor, we agree that This law would be unconstitutional Even under intermediate scrutiny But if I may press a little bit The argument about the Why wouldn't we just stop there I don't understand Why if the law falls under intermediate scrutiny Why we need to go for the most The far broader ground Of striking it under strict scrutiny Which would allow The city no flexibility whatsoever Your honor If you are convinced that the law Fails intermediate scrutiny Was your position Requires to change our precedent No your honor We don't think so Because this is a content based restriction on speech Again, if you are convinced that it Fails even intermediate scrutiny By all means That would be a more than adequate Basis But I think this is That the precedent actually says This is a content based restriction First it is limited To speech that is Related to To essentially Historical matters And sightseeing The law applies only to people Who act as a tour guide People who guide people In touring historic areas of the city And entails conduction Or participation in sightseeing It wouldn't apply for example To somebody who For instance offers advice About which restaurants to go to So that's on its face content based And under Reed v. Town of Gilbert It is therefore subject to strict scrutiny Again, if you think it can be struck down Under intermediate scrutiny By all means Amicus does want to make sure That this law isn't labeled in the process As content neutral Because we think that would be inconsistent With the precedent That such laws are content based Yeah, again I don't think We need to necessarily go there I was thinking about our Reynolds precedent And that seemed to be A much more heavy handed Imposition on speech Because it involved regulation Of political speech But I don't think this is regulation Of political speech And as I recall the Reynolds case It dealt with an absolute prohibition Of speech In certain locations And this involves a burden To be absolutely sure But I'm not sure it rises To the level of an absolute prohibition And I think these Occupational licensing cases Interest me Because it seems to me That there are Two very legitimate Set of concerns here One, you don't want A guild mentality to take hold And you don't want barriers of entry To be so high That you deprive the public Of the values of competition And the value to the consumer Of not having skyrocketing prices So I think these Occupational licensing schemes Particularly outside of professional services Are subject to abuse But at the same time They do serve a purpose In ensuring competency In the service offered to the public Because the public Is in a real informational deficit And the public needs cues And the occupational licensing Affords the public a certain assurance That it will get what it paid for So in thinking of these competing considerations That apply to occupational licensing They seem to me to suggest Intermediate scrutiny in this area Which gives rise to Which allows us to respect Both the values served by occupational licensing But at the same time to be aware Of the real drawbacks So that's what draws me To the intermediate scrutiny Is it seems to me A balanced approach To this area of occupational licensing Wouldn't you think? Your honor, I appreciate The arguments in favor of that And they could be arguments In favor even of a compelling interest claim Although we think that Here the interest is not compelling enough But let's consider If I might, an analogy Let's say that the city of Charleston is worried That people who write books about Charleston And who make documentaries about Charleston And who of course sell the books And documentaries to the public That they're not really competent enough That it portrays the city in a bad light Drives away tourists And it's not fair to readers Who fork over good money And then get a bad book I take it we'd agree That the government couldn't say Before you write a book Or make a movie That is sold for money About Charleston You have to pass a test about Charleston I think the consumer interest The protection interest Is a real interest The tourism protection interest Is a real interest But it can't justify a licensing scheme That requires someone to pass a test Before engaging in that kind of speech for money Selling books or selling movies If that's so Then we think the same thing is true With regard to selling tour guide services Which are a form of speech In a sense you might think of it as a form of theater Especially the way some tour guides do it So I think that shows That that would be both viewed As a content based restriction It would be viewed as a restriction On fully protected speech Even if it's not political speech And it would be subject to speech Don't you think there's a distinction Between regulating the writing of a book And the regulating of giving tours Your honor There may be a distinction As to the non-content elements Like for example you might say If you're going to have a horse-drawn carriage tour You've got to know how to Drive a horse-drawn carriage I'm going to look at that context Because I mean You know the Supreme Court Even in the commercial speech areas Says if you just focus on the message It's all content If you price liquor At a very high price In order to deny drinking You're focusing on the content of the price But the context is very important I'm not sure just carving out The fact that speech says something Makes it content based I think there intuitively And I haven't thought this through completely But it seems to me The regulation of book writing And the regulation of tour giving Would seem to be different contexts Which might justify a different approach Your honor I appreciate the intuition But I think the precedents Generally reject that intuition They conclude that different media Are equally protected With one exception of broadcast television Equally protected when it comes to Regulation of what is said And likewise licensing requirements for it For example video games One can certainly say intuitively Video game is not the same as a play It's not the same as a book or as a movie Yet the Supreme Court held That video games are subject to full protection And indeed struck down Under strict scrutiny A regulation And there was only a regulation Of distribution of video games to minors Even so it was struck down Under strict scrutiny Likewise in the disabled communications case The court said dial-a-porn Restrictions on dial-a-porn Are subject to Full First Amendment strict scrutiny Now dial-a-porn also involves people speaking Involves also people speaking On non-political subjects It's true it's over the phone Rather than on a bus But the court If the law fails intermediate scrutiny Why do we need to get to these To these other questions Which seem to me a little more dicey The strict scrutiny or content based If the law, you know, sufficient under the day If the law fails intermediate scrutiny That's what's necessary to resolve the case I mean it's It's just a question of I repeat myself It's sufficient under the day I guess that That's my My intuition on something And I do want to say Mr. Volokh It's a pleasure to hear from you As it always is And I appreciate your interest in this case And in coming before the court If you have a brief concluding comment I'd be happy to We'd be happy to hear it If not we can Hear what Mr. Hines Says by way of rebuttal Do you have any brief concluding comment? Yes your honor We entirely agree that This law would fail intermediate scrutiny And if you strike it under intermediate scrutiny We'd be delighted Our only request would be That this court not conclude that the law Is content neutral And not conclude that intermediate scrutiny Is necessarily the only possible test But that under this That it fails even intermediate scrutiny All right we thank you very much Thank you And Mr. Hines let's hear from you in rebuttal May I proceed Your honor this is Russ Hines May I proceed Certainly may Thank you your honor Again may it please the court I'm going to move through this first point quickly But I must say I'm thankful To Amicus Council For mentioning this issue about About books on Charleston Because it allows me to make The point I was trying to make earlier This is a distinction between conduct and speech And guiding And the point of making As I understood his argument He at one point said something along the lines of You've got to know If you're giving a carriage tour Obviously you have to know how to drive a carriage Well that is no less true If you're guiding somebody You've got to have some basic ability to guide For instance I took a smattering Of high school Spanish And if I held myself out As a Spanish language interpreter Once they got past counting to ten I would be of very little help to anybody To the point not only Obviously I have to speak To perform that service But I have to have the ability To even call it that service And so the city's point here Is regulating conduct Any notion of this being Having a speech component Is incidental And this is Expressions Hair Design Versus Snyderman 2017 U.S. Supreme Court case The law's effect on speech Would only be incidental To its primary effect on conduct If this is just conduct Why are you requiring people To take a test Measure their competence Vis-a-vis a 400, 500 page manual The test is a means Of trying to promote Competency and quality In being able to provide the service The tour guides are offering For sale to the public I understand I'm trying to ask about The focus between conduct And I understand your point on conduct Giving tours involves conduct But it also involves content And in this case you license On the basis of both And with respect to the content You want the tour guide To have a certain level of information So that they speak that information In giving the tour Respectfully That's overstating it The tail end of that So that they speak that information Absolutely not true There is no restriction On what anybody says And I should point out It was said about this being The city's highest priority Why test it? Why test on that basis? In other words Then it's not narrowly tailored If there's no If you have no interest In what the person says Then you shouldn't test On the manual The city doesn't have an interest In what the person By the way Guiding is not just talking obviously For instance Someone standing on a street corner For pay Talking about Charleston Is not guiding So there's a component Of having Again We say this in our brief I hope it's not too glib But the blind May lead the blind But the blind can't guide the blind As far as why This subject matter is tested It's because And this was found Page 2003 Of our joint appendix That the city surveyed In partnership With the Charleston Chamber of Commerce About why it was That tourists were coming To Charleston And these studies This is in the judge's order These studies conducted By the Chamber of Commerce Confirmed that it all Was history And historic sites Which was the impetus For enacting the law It's not Charleston The city That's pushing an agenda It's Charleston That's taking note of The customer's Preference Expectation This is promoting And protecting You know The quality That is received For the service Of guiding That is provided Page 2009 Of the joint appendix The court Specifically finds It's not unreasonable For the city To expect That tour guides Will receive questions From tourists About architecture And historic preservation Goes on to talk About Mayor Riley And his expertise And finding his Expertise to be Very valuable On the subject I would note In this context There was some notion That almost sounded Like we were hearing An evidentiary argument That's really out of place That well The only evidence In the record Is the testimony Of people That were associated With the city Well that That is evidence That's not Speculation And so In your honor And one other thing That I have to also Mention in the same vein It was stated As I understood it And forgive me If I'm misstating it But it was said By opposing counsel That Judge Norton Found In his findings In fact In his conclusions Of law That all these Other alternatives Were indeed Readily available And less Less restrictive Your honor You know I defy anyone To read that order And find where That's Where that's It is absolutely Not in there And in fact The judge Makes clear That in terms of Because again This is a Review obviously In terms of a Factual Evidentiary Defect In our record That causes us To lose this case There is not one That Judge Norton's order Says I don't have a problem With your justifications I have a problem With the timing of them Because this is The final language Before he Well I guess his signature page If the court will endorse me The testimony presented During the trial About the respective Impracticalities of using For example The deceptive solicitation ordinance Or a voluntary certification scheme Is post hoc justification For the licensing law Under Reynolds The lack of evidence That the city actually tried Less restrictive alternative Forces this court To reluctantly conclude That the cause Of the licensing law Is not narrowly tailored It fails Intermediate scrutiny Is this you speaking? Your honor I was reading there And forgive me For a brief read That was from The jury's order I'm trying to make a point There's been a lot Of discussion In this argument Do you have some Concluding comments That you'd like to make Because I think Your time has expired But I want to give you The last word So why don't you Just sum up for us If you would Would you mind? No No Your honor Yes your honor Of course I'll do that Very briefly This is From a case Called backpage.com Talking about The supreme court Supreme court case About a strict scrutiny case When a plausible Less restrictive alternative Is offered To a content based Speech restriction It's the government's  That the alternative Will be ineffective To achieve its goals That's in the context Of strict scrutiny And the alternative Has to be plausible Even if The alternative Has to be Even in strict scrutiny So this notion Of any alternative Put forth Has to be Swatted down First has to be Filtered through The lens of Is it even plausible And your honor An alternative Is not a different Objective entirely I can get to Richmond And have this argument Been there By train Or by car Or by plane Those are alternatives But if I couldn't go To D.C. I mean that's just Going somewhere else And so for an alternative To be one that needs to be Discussed It has to be At least as effective Because if it's not It's not an alternative An alternative Is a different means To substantially The same end It's not a different means To a material Different end And to rule Otherwise your honor Is going to The court has Mentioned this In Denver area Education telecom About creating Rigid rules That become A straitjacket That disables The government From responding To serious problems Which just Incidentally The reason we're Doing this argument On telephone Is one that Suggests that the government In the interest Of serving the people It needs to have That flexibility This sort of Second guessing And chipping away At again 30 some years After it's passage Is again One I think To be quite wary of And I think Especially Essentially That the plans Are trying to apply A standard That is Incredibly unwieldy For instance I heard it said That trying The question About whether or not You have to be Actually trying These methods And say Well that would be The best way That would be An incredible standard To say You must identify A problem Try and fail To correct it For your citizenry And for the public And then you can Actually solve it I mean that Ties the government's Hand in a way Thank you Mr. Hines We appreciate it Very much Thank you so much Thank you I want To thank Council All three Of you For the helpful Contributions You've made To our Consideration Of this Case The quality Has been high And we are very appreciative And As I say The Area I'm disappointed That we can't Come down And shake Your hands And express In that manner Our personal Appreciation For the Contribution You've made To the court But Our Appreciation Is no Less And I hope That you and Your families Will Stay safe Thank you And this Court will Adjourn Signed Adai Thank you Adjourn Signed Adai God save the United States And this Honorable Court
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King